UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JITKA McINTOSH,

                Plaintiff,

        -vs-                                      06-CV-708

BANK OF AMERICA,

                Defendant.

---

APPEARANCES:    JITKA McINTOSH, Plaintiff *Pro Se.*

                          BOND, SCHOENECK & KING, PLLC (JAMES J. ROONEY, ESQ., OF COUNSEL), Buffalo, New York;

                          EDWARDS ANGELL PALMER & DODGE LLP (GINA D. WODARSKI, ESQ., OF COUNSEL), Boston, Massachusetts, Attorneys for Defendant.

## INTRODUCTION

This case was recently transferred to the docket of the undersigned by the Hon. William M. Skretny. It is currently before the court on the defendant's motion for summary judgment dismissing the complaint (Item 170).

## BACKGROUND

Plaintiff commenced this action with the filing of a complaint on October 24, 2006 (Item 1). She asserted claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, *et seq.* ("ADA"). In her *pro se* form complaint, plaintiff stated that she filed a charge with the Equal Employment Opportunity Commission ("EEOC") on March 23, 2006

and received a Right to Sue letter on July 25, 2006 (Item 1).[1] She alleged that defendant failed to promote her and failed to provide her with reasonable accommodations so that she could perform the essential functions of her position. She also alleged that she was harassed on the basis of her sex and retaliated against because she complained about discrimination directed toward herself and others. *Id.*

After successfully moving for an extension of time in which to answer (Items 4, 8), defendant filed its answer on March 8, 2007 (Item 10) and an amended answer on March 20, 2007 (Item 15). On March 9, 2007, plaintiff filed a second charge of discrimination with the EEOC, in which she alleged national origin discrimination and retaliation. On November 5, 2007, she amended the charge to include claims of discrimination based on sex, age, and disability. On July 7, 2008, plaintiff filed a second complaint (Case Number 08-CV-503), alleging discrimination based on disability, national origin, sex, and age, and retaliation. On February 5, 2009, defendant moved to have the two cases consolidated (Item 102). In an order filed February 13, 2009, the court denied the motion because there was a pending motion to dismiss in case 08-CV-503 (Item 106).

Plaintiff's claims of sex and age discrimination and retaliation in case 08-CV-503 were dismissed for failure to state a claim and/or to timely exhaust administrative remedies. On September 4, 2009, following the resolution of the motion to dismiss in case 08-CV-503, the two cases were consolidated.

---

[1] The documents in support of the motion for summary judgment indicate that plaintiff wrote to the EEOC on March 24, 2006, and her formal complaint was signed April 28, 2006 (Item 72, App. 194-96).

On November 18, 2009, defendant filed a motion for judgment on the pleadings dismissing plaintiff's claims for gender discrimination and retaliation pursuant to Title VII and the New York State Human Rights Law, N.Y. Exec. Law § 196 ("NYSHRL") (Item 124). In a Report and Recommendation filed June 7, 2010, Magistrate Judge H. Kenneth Schroeder recommended that the motion be granted (Item 156). On July 21, 2010, Chief Judge Skretny denied the plaintiff's objections and accepted the Report and Recommendation in its entirety (Item 162). Accordingly, plaintiff's remaining claims are limited to discrimination based on national origin and disability, and retaliation.

On January 28, 2011 defendant filed the instant motion (Item 170). Plaintiff filed her response, consisting of an affidavit and statement of facts, on April 4, 2011 (Items 183, 184). She was denied leave to file a memorandum of law in excess of the 25-page limit (Item 187), and filed the memorandum on May 13, 2011 (Item 188). Defendant filed a reply memorandum on July 15, 2011 (Item 191) and concurrently filed a motion to strike plaintiff's factual averments (Item 192). On July 21, 2011, plaintiff filed a motion requesting a status conference (Item 197), which was denied (Item 198). In consideration of plaintiff's *pro se* status, the court denied the defendant's motion to strike, stating that it will consider the plaintiff's submissions with due regard to defendant's arguments regarding admissibility (Item 199). The court has determined that oral argument on the motion for summary judgment is unnecessary. For the reasons that follow, the defendant's motion to dismiss is granted, and the complaint is dismissed.

## FACTS[2]

Plaintiff was born in the Czech Republic in 1962 and came to the United States in 1990 (App. 7). She started working for defendant in approximately October 2002 (App. 25). She was a customer service representative in the Accelerator Department, selling various Bank of America products by telephone (App. 26-28).

In an affidavit, Diane Herman stated that she was the Accelerator Department Telephone Team Manager from August 2005 until May 2008 (App. 340). Once, after plaintiff expressed frustration with life in the United States, Herman asked her if she ever considered returning to the Czech Republic (App. 341, ¶ 1). On August 4, 2004, Herman verbally coached plaintiff regarding her handling of customer calls and advised her that the next customer complaint would result in a written disciplinary action (App. 352). On August 19, 2005, plaintiff received a written counseling memorandum for her refusal to transfer a customer call to a specific employee (App. 354).

In October 2005, plaintiff received her 2005 performance evaluation. She was not happy with it and expressed a desire to transfer from the Accelerator Department. Herman reminded plaintiff that she could not apply for other Bank of America positions within six months of receiving a written warning (App. 342, ¶ 10). Despite this, plaintiff applied for a position and began approaching other supervisors in the area asking to be transferred to their teams. *Id.*, ¶¶ 11-12.

---

[2] This factual statement is taken primarily from the exhibits submitted in support of the motion for summary judgment and appended to defendant's Statement of Facts (Item 172). These include the plaintiff's deposition testimony, personnel documents, internal memoranda, and affidavits of Bank of America employees. References to the exhibits will be preceded by "App.," consistent with their pagination in the electronic docket. The court has also reviewed the plaintiff's submissions in opposition to the motion, docketed as Item 184.

In March 2006, Herman was contacted by a recruiter with regard to a position for which plaintiff had applied. Herman told the recruiter that she could not recommend plaintiff for the position (App. 343, ¶ 15). Plaintiff had complained to other associates that her food had been poisoned by a co-worker. *Id.* Additionally, plaintiff accused Herman of having her followed. Herman advised plaintiff to contact defendant's Employee Assistance Program ("EAP") if she needed to speak to someone. *Id.* On the advice of defendant's human resources department, on March 24, 2006, Herman issued plaintiff a Final Written Warning for her inappropriate behavior (App. 369-70). Herman was unaware at the time that plaintiff had contacted the EEOC (App. 343, ¶ 17).

According to plaintiff's 2006 first and second quarter manager reviews, plaintiff had not met all of her sales goals, but her overall rating was "Meets Expectations" (App. 379). On May 1, 2006, plaintiff disrupted a team meeting by playing with her cell phone (App. 344, ¶ 19). In June 2006, Herman received e-mails from a corporate trainer documenting plaintiff's failure to follow instructions during an exam. *Id.,* ¶ 20. On June 6, 2006, plaintiff missed a staff meeting, despite being specifically instructed to attend the meeting by Patrick Marks, Herman's manager. She then approached other associates and asked them to sign a document she had drafted stating that she had attempted to attend the meeting but arrived late. *Id.,* ¶ 21. Herman also received a complaint from another associate that plaintiff had been tracking reward points[3] earned by her co-workers. *Id.,* ¶ 22. On June 19, 2006, plaintiff was issued another Final Written Warning (App. 387). She was advised that additional misconduct or inappropriate behavior could result in

---

[3] "Reward points" are an incentive system by which defendant rewards its employees. The employee accumulates points, which can be used to purchase various prizes.

termination (App. 345, ¶ 23). At the time, Herman was unaware that plaintiff had filed a complaint with the EEOC. *Id.*

On September 1, 2006, Herman received a complaint about plaintiff from another Bank of America employee who had requested information from plaintiff on behalf of a bank client and plaintiff had refused the request (App. 345, ¶ 24). On November 1, 2006, Herman met with plaintiff regarding her annual review. Plaintiff's overall rating was "Does Not Meet Expectations" for her failure to meet important sales goals and her poor interaction with customers and co-workers (App. 397). They planned to meet again in March 2007 "to review what progress there has been with your goals." *Id.* Herman told plaintiff that she needed to meet her year-end goals despite her scheduled vacation (App. 345, ¶ 26). Additionally, plaintiff was advised that she could not take more than two weeks of vacation at a time due to the fact that defendant was short-staffed and plaintiff had not made her sales goals (App. 400).

On December 2, 2006, a customer called to complain about plaintiff's handling of her request (App. 346, ¶ 27). Although she could have terminated plaintiff's employment, Herman issued a third Final Written Warning on December 5, 2006 (App. 404).

After December 5, 2006, plaintiff worked one day. She used a combination of vacation time, personal leave, and sick time between December 6, 2006 and January 2, 2007 (App. 346, ¶ 30; App. 406, 407). On January 2, 2007, plaintiff was advised that her employment was terminated (App. 347, ¶ 31).

Herman stated that plaintiff had a personality conflict with another co-worker, Anthony Parisi, but plaintiff never complained to Herman that Parisi's conduct was in any way discriminatory (App. 347, ¶ 33). Additionally, Herman stated that she was unaware

that plaintiff suffered from any disability or medical condition, and plaintiff never requested an accommodation (App. 349, ¶ 48).

In support of the motion, defendant submitted internal records of plaintiff's attempts to secure other Bank of America positions after October 2005. The records indicate that plaintiff applied for two positions in October 2005, but was subject to a written disciplinary warning and thus was not eligible (App. 481-83; App. 476). In an affidavit, Wanda Ebrahim, a Bank of America recruiter, stated that she contacted Ms. Herman regarding plaintiff's application for a Personal Banking position in October 2005, but did not inquire further upon learning that plaintiff had received a written warning less than six months prior (App. 478, ¶ 12). Plaintiff applied for a group banking position in March 2006 and was found to have not met the minimal qualifications (App. 484). She also applied for positions as a Personal Banker, but Ms. Herman did not support her application. Ultimately, both positions went unfilled (App. 484-85). Plaintiff applied for a position as a small business specialist in March 2006, but was found not to be minimally qualified (App. 485).

In further support of the motion for summary judgment, defendant submitted affidavits from Maggie Rejman, Zoe Dettman, and Alicia Mowry, plaintiff's co-workers. Ms. Rejman and Ms. Mowry stated that they witnessed plaintiff behaving in a confrontational and argumentative manner with management and being rude to and arguing with customers (App. 505, ¶ 4; App. 579, ¶ 4). In March 2006, plaintiff falsely accused Ms. Rejman of poisoning her. In November 2006, plaintiff told Ms. Rejman that she might leave her employment with Bank of America and return to the Czech Republic or move to Jamaica (App. 506, ¶¶ 6-9). Ms. Dettman stated that plaintiff talked about moving to

Jamaica in 2005 and 2006. Ms. Dettman visited plaintiff's condominium, which was for sale, to determine if she was interested in buying it (App. 507, ¶¶ 4, 5).

Defendant also submitted an affidavit from Jacqueline Natalino, a corporate trainer for Bank of America. Ms. Natalino stated that she proctored an examination on June 2, 2006 for members of the Accelerator Department. Plaintiff was unable to complete the exam in the two hours allotted, and refused to finish when Ms. Natalino requested that she do so (App. 509, ¶¶ 4 - 6).

In an affidavit, Michael Gordon, a corporate recruiter for Bank of America, stated that plaintiff applied for a position as a Personal Banker in the Feathersound Banking Center on February 21, 2006. Plaintiff's manager did not support her bid for the position (App. 519, ¶¶ 2, 5). Thereafter, plaintiff applied for another position on March 14, 2006. Again, plaintiff's manager would not support her. *Id.,* ¶ 6. Mr. Gordon stated that a successful candidate for the Personal Banker position must be consistently meeting or exceeding her sales goals at her current position in order to meet the minimum qualifications for the position (App. 520, ¶ 14). A candidate must also have excellent customer service skills (App. 521, ¶ 17). The requisitions for both positions were cancelled without being filled (App. 520, ¶ 10).

Defendant also submitted affidavits from several of plaintiff's co-workers who applied for and were awarded positions with Bank of America, and an affidavit of a Human Resources manager regarding several of plaintiff's co-workers who were awarded positions within Bank of America. All the employees were qualified for the positions they sought and had no record of disciplinary or performance issues (App. 534-46). None of the co-workers was aware of plaintiff's having a disability or requesting an accommodation. *Id.*

8

Plaintiff testified that she "loved" her job and was happy, even at the time she was terminated (App. 30). She believed that Diane Herman prevented her from relocating because she "was not one of Diane Herman's favorites." (App. 40). Plaintiff testified that she found gray crystals on her desk and thought that someone at work had poisoned her (App. 42 - 47). She later testified that she believed Ms. Herman poisoned her (App. 71).

Plaintiff states that on October 26, 2005, a co-worker put a Czech flag on her computer monitor (App. 51). She was offended because the co-worker gave no one else a flag and she "took it as a message to leave this country" (App. 52). She also took it as a message from management, because she saw the co-worker, Dan McParlane, leaving for lunch at the same time as the management team. Plaintiff spoke with McParlane directly as she did not want him to be punished (App. 56). She did not remove the flag, however, because it was a "gift" (App. 52).

Plaintiff admitted missing a staff meeting on June 6, 2006, although she stated that she attempted to find the meeting room (App. 74 -75). She then prepared a document that stated she was going towards the meeting as it was ending and asked people leaving the meeting to sign it (App. 75).

Plaintiff testified that she has shooting pain down both arms as a result of her herniated discs. While she is able to drive, she cannot turn her head. (App. 58). She is sometimes unable to comb her hair, and doing housework causes her pain (App. 59). Sometimes typing is painful. *Id.* She is in "horrible" pain in the winter. She also suffers from an swollen jawbone in the winter due to an abscess (App. 60, 131). The jaw pain first occurred in 1994 as a result of complications from a root canal. *Id.* It occurred again in March 2003, and again after she left Bank of America (App. 61). She did not have a

history of the problem in the summer. It occurred usually in the winter or spring, when her body's immunity is low due to a lack of vitamin D (App. 131). Plaintiff stated that she is claiming that defendant discriminated against her because of this jaw problem (App. 63). She testified that the abscess does not prevent her from doing any activity, but she must be careful not to lose her balance (App. 134).

Plaintiff admitted that during her 2006 evaluation, she was rated as not meeting expectations in three goal areas–Accelerator II, checking accounts, and mortgage rewards applications - and three behavior areas (App. 89 -90). With regard to the incident on December 2, 2006, plaintiff stated that she attempted to find a missing document for a customer but was unable to. She then told the customer to call back on Monday (App. 93). Plaintiff stated that she had three weeks of vacation in 2006 and planned on taking two weeks of vacation in December to visit Jamaica (App. 96). On December 5, 2006, plaintiff's managers told her that she needed to reach her quarterly sales goal by the end of December (App. 119).

Plaintiff told Ms. Herman that she wanted to transfer to a new job because she wanted customer contact. She did not mention the need for an accommodation for a disability (App. 118). She testified that she decided she wanted to relocate following an incident with a co-worker who plaintiff stated made faces at her (App. 124 -25). She also testified that "winter makes [her] health condition unbearable or worse" (App. 131). Plaintiff testified that she asked for unpaid leave every winter so that she could extend her vacation, and Ms. Herman refused her request (App. 137). She never presented Ms. Herman any medical documents stating that she needed unpaid leave for medical reasons

(App. 138). None of her doctors ever told her that she should move because of her physical condition (App. 147).

Plaintiff complained that other co-workers were allowed to transfer to other positions and cities, but she had no idea of their qualifications, their disciplinary records, or the qualifications of the other applicants (App. 151 - 57).

The court has reviewed the documents submitted by plaintiff in opposition to the motion for summary judgment (Item 184). Medical records indicate that plaintiff was diagnosed with myofascial strain and inflammation in August 2001 and herniated discs at C4-5 and C5-6 in February 2004 (Item 184, pp. 20-21). In an e-mail dated March 6, 2006, plaintiff told a recruiter that "this cold climate in NY is my primary reason for moving to FL." *Id.,* p. 54.

## DISCUSSION

**1. Summary Judgment Standard**

Rule 56 provides that summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and facts are "material" if they "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the burden of showing the absence of a genuine issue of material fact, and the proffered evidence must be viewed in the light most favorable to the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the movant

meets this burden, the burden then shifts to the nonmovant to come forward with evidence "sufficient to satisfy every element of the claim." *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008). However, the nonmovant "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.), *cert. denied,* 524 U.S. 911 (1998).

This Circuit has emphasized that courts should be especially cautious in granting summary judgment in employment discrimination cases, where the employer's intent is usually a central factual issue. *See Chertkova v. Conn. Gen. Life Ins.*, 92 F.3d 81, 87 (2d Cir. 1996). "However, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

**2. Discrimination Based on National Origin**

Plaintiff contends that she was discriminated against based on her national origin. Construing her *pro se* complaint liberally, plaintiff claims that she was subjected to unwarranted discipline, was not promoted or transferred, and was eventually terminated because she is from the Czech Republic and speaks with an accent. Title VII provides that it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

Courts analyze employment discrimination claims brought under Title VII by using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). First, the plaintiff must establish a *prima facie* case of discrimination by demonstrating that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. *Ruiz v. County of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010). While this burden has often been characterized as "minimal" or "*de minimis*," *see, e.g., Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (citing cases), courts have not hesitated to grant summary judgment in favor of the employer where the plaintiff offered no evidence to suggest that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See, e.g., Kazukiewicz v. Kaleida Health*, 2010 WL 2998671, at *4 (W.D.N.Y. July 26, 2010) (citing *Rodriguez v. Pierre New York*, 299 F. Supp. 2d 214, 218 (S.D.N.Y. 2004), *aff'd sub nom. Rodriguez v. Human Resources Director*, 144 Fed. Appx. 197 (2d Cir. 2005)).

If the plaintiff succeeds in satisfying this initial burden, then "a presumption of discrimination arises, and the burden shifts to the defendant, who must proffer some legitimate nondiscriminatory reason for the adverse action." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010).

> The burden that shifts to the defendant . . . is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (internal citation omitted).

If the defendant produces evidence of a legitimate, nondiscriminatory reason for the adverse employment action, "the presumption of discrimination created by the *prima facie* case drops out of the analysis, and the defendant 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'" *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002) (quoting *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 154 (2d Cir. 2000)).  The burden therefore shifts back to the plaintiff to give her the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Burdine*, 450 U.S. at 253; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  Although the analytical framework is articulated and applied in terms of "shifting" burdens, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Leibowitz v. Cornell Univ*., 584 F.3d 487, 499 (2d Cir. 2009) (quoting *Burdine,* 450 U.S. at 253).

Here, plaintiff is a member of a protected group, and she suffered adverse employment actions in that she received disciplinary warnings, was not transferred or promoted as she wished, and was eventually terminated. The court will assume, for purposes of the motion, that plaintiff was qualified for the position she held as a customer sales representative.  Plaintiff has not shown, however, that she was qualified for any of the positions she sought internally with Bank of America.  Plaintiff was not eligible to bid

on job postings within six months of her written disciplinary warnings. She was found not to be minimally qualified for several positions, and she was not recommended by her manager for the Personal Banker positions that required consistency in meeting sales goals and strong customer service skills. Additionally, plaintiff was not qualified for the positions that required fluency in Spanish.

Even if the court were to assume that plaintiff had established a *prima facie* case of national origin discrimination, defendant has offered legitimate, nondiscriminatory reasons for the discipline she received, the failure to promote or transfer her to another position, and her termination, including her failure to meet sales goals and her inappropriate interactions with customers and co-workers. The written warnings all arose from customer and/or co-worker complaints or involved insubordination toward her managers. Plaintiff bases her claim of national origin discrimination primarily on the alleged statement by Diane Herman that plaintiff "should go back to [her] old country." Even crediting plaintiff's version of the events, that Ms. Herman made the statement in anger, it is a stray comment of the type that, without more, is not probative of discriminatory intent. The comment was made a year and a half before plaintiff's termination, and plaintiff admittedly never complained to management about it. "[S]tray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination." *Danzer v. Norden Systems, Inc.,* 151 F.3d 50, 56 (2d Cir. 1998).

Additionally, plaintiff complains that she was given a Czech flag as a gift from a co-worker, but that she was offended by it and took it as a sign of discrimination. Plaintiff admitted that she spoke to the co-worker about the flag and accepted his apology. This isolated incident does not suggest discrimination based on national origin.

15

Plaintiff has submitted no evidence, other than her speculation, to support her claim that the reasons for the adverse employment actions were merely a pretext for discrimination. She has failed to sustain her burden in opposition to the motion for summary judgment, and the claim of discrimination on the basis of national origin must be dismissed.

### 3. Discrimination Based on Disability

Plaintiff also alleges that she suffered discrimination on the basis of a disability. Title I of the ADA prohibits employers from discriminating again any "qualified individual on the basis of disability in regard to" any aspect of employment. 42 U.S.C. § 12112(a). A plaintiff asserting a violation of the ADA must show that: (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) she suffered adverse employment action because of her disability. *See Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001). A disabled individual under the ADA is one who: "(a) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) [has] a record of such an impairment; or (c) [is] being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Once plaintiff has established the elements of a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Burdine,* 450 U.S. at 254. The burden then returns to plaintiff to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is pretextual. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993).

Plaintiff cannot establish a *prima facie* case of disability discrimination because she has not shown that she was disabled within the meaning of the ADA. Plaintiff complains of neck pain due to herniated discs in her cervical spine and an abscess in her jaw,[4] but she has offered no evidence to suggest that either of these impairments substantially limits a major life activity. Plaintiff testified that these conditions are isolated and intermittent. She complained of an inability to turn her head and sporadic numbness in her hands, but stated that she was able to work, drive, type, and clean her house, albeit with some difficulty. Additionally, none of plaintiff's physicians stated that she was limited from any activity in any way or that she required an accommodation in the workplace. This evidence is insufficient to raise a genuine issue of material fact regarding disability. Accordingly, plaintiff has not established that she was disabled within the meaning of the ADA.

Even if the court were to find that plaintiff had established a *prima facie* case of disability discrimination, the claim should nonetheless be dismissed. Defendant proffered legitimate, nondiscriminatory reasons for the counseling memoranda and her termination, based on the failure of plaintiff to meet her sales goals and her inappropriate and disruptive behavior. Plaintiff has offered no evidence, other than her speculation, that these reasons were merely a pretext for disability discrimination.

---

[4] In her response to the motion, plaintiff, for the first time, alleges that she suffers from a sleep disorder and depression. She also attributed blisters to stress from the workplace, contradicting her previous deposition testimony. Plaintiff may not raise an issue of fact by contradicting or embellishing previous testimony, and the court declines to consider such allegations. *See Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir. 2001).

Additionally, plaintiff argues that defendant failed to accommodate her with unpaid leave in the winter or a transfer to a warmer climate. As an initial matter, plaintiff has not established that she was disabled, and so has failed to show that any accommodation was required by the ADA. In any event, plaintiff has not shown that she was eligible or qualified for any of the positions she sought, or that she was denied the positions or unpaid leave based on a disability. Accordingly, plaintiff's ADA claim must be dismissed.

### 4. Retaliation

Finally, plaintiff contends that she was retaliated against for her filing of charges with the EEOC and for bringing this federal court action. Construing plaintiff's *pro se* complaint liberally, she alleges that she was issued written disciplinary warnings in June and December 2006 and was terminated in January 2007 following the filing of her discrimination claim with the EEOC in April 2006 and the commencement of this lawsuit in October 2006.

Claims of retaliation are also analyzed under the burden-shifting rules of *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). To set forth a *prima facie* claim for retaliation, plaintiff must show: (1) that she participated in a protected activity; (2) that the defendant knew of the protected activity; (3) that she suffered an adverse employment action; and (4) that a causal connection exists between plaintiff's protected activity and the adverse employment action. *See Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir. 2000). Once plaintiff makes out a *prima facie* case of retaliation, the burden shifts back to the defendant employer to show that there was a legitimate, non-retaliatory

reason for its actions. If the employer meets its burden, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Jute*, 420 F.3d at 173 (citing *Fields v. New York State Office of Mental Retardation & Developmental Disabilities,* 115 F.3d 116, 120-21 (2d Cir.1997)).

It is undisputed that plaintiff participated in protected activity and that she suffered adverse employment actions. Even assuming, for purposes of this motion, that defendant knew of her protected activity and that she has shown a causal connection between the protected activity and the alleged retaliation, defendant has proffered legitimate, non-retaliatory reasons for the adverse actions. The June 2006 warning was the result of plaintiff's failure to attend the staff meeting and her failure to follow the instructions of the trainer during an exam. The December 2006 warning was the result of a customer complaint and plaintiff's failure to meet significant sales goals. Following the written warning on December 5, 2006, plaintiff used all but four hours of her remaining sick time and worked only one day until her vacation started on December 18, 2006, despite her failure to meet her goals and with the knowledge that she was expected to meet the goals by the end of the year regardless of her planned vacation.[5] Plaintiff was aware that she had received three "Final Written Warnings" and could be terminated for the next instance of inappropriate behavior, customer complaints, or performance deficits.

---

[5] Plaintiff contends that she was not told during her evaluation that she had to meet her 2006 sales goals by the end of the year, but rather that she and Herman would meet again in March 2007 to assess her progress. Regardless of this apparent misunderstanding, it is undisputed that at the time the December warning was issued, plaintiff was advised that she was to expected to meet the sales goals by the end of the year.

Plaintiff has offered no evidence other than temporal proximity to show that defendant issued the written disciplinary memoranda or terminated plaintiff's employment in retaliation for her protected activity. While "temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation under Title VII, . . . without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (per curiam). Plaintiff has failed to sustain her burden in opposition to the motion for summary judgment and, accordingly, plaintiff's retaliation claim must be dismissed.

## CONCLUSION

Based on the foregoing, the defendant's motion for summary judgment (Item 170) is granted, and the complaint is dismissed. The Clerk is instructed to enter judgment for defendant and close the case.

So ordered.

`

_____\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: August 24   , 2011
p:\opinions\06-708.aug92011